UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* BILLY JOE HUNT,    Plaintiff, v. COCHISE CONSULTANCY, INC. d/b/a COCHISE SECURITY, *et al.*,    Defendants. | Case No.: 5:13-cv-2168-LCB |

## MEMORANDUM OPINION AND ORDER

This is a *qui tam* action brought by relator Billy Joe Hunt against two defendants: The Parsons Corporation, d/b/a Parsons Infrastructure & Technology ("Parsons") and Cochise Consultancy, Inc. d/b/a Cochise Security ("Cochise"). According to Hunt, the defendants, along with an employee of the United States Army Corps of Engineers ("COE"), violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, by submitting to the United States false or fraudulent claims for payment. The United States declined to intervene in the case, and Hunt has proceeded as a relator on behalf of the United States pursuant to 31 U.S.C. § 3730(b). The judge previously assigned to this case granted the defendants' motions to dismiss based on their assertion that the complaint was filed outside the statute of limitations for such actions. (Docs. 63 and 64). However, the Eleventh Circuit held

that the district court erred in that determination and reversed. *United States, ex rel. Billy Joe Hunt*, *v. Cochise Consultancy, et. al.,* 887 F.3d 1081 (11th Cir. 2018). The United States Supreme Court affirmed the Eleventh Circuit's decision. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019). The case is now back before the Court on the defendants' renewed motions to dismiss[1]. (Docs. 83 and 84). The motions are fully briefed and are ripe for review. For the following reasons, the defendants' motions to dismiss are due to be denied.

## I. Factual Background

The Eleventh Circuit thoroughly described Hunt's allegations in the above-cited opinion:

> Hunt alleges that Parsons and Cochise (the "contractors") defrauded the United States Department of Defense for work they performed as defense contractors in Iraq. The Department of Defense awarded Parsons a $60 million contract to clean up excess munitions in Iraq left behind by retreating or defeated enemy forces. Hunt worked for Parsons in Iraq on the munitions clearing contract, managing the project's day-to-day operations. One facet of the contract required Parsons to provide adequate security to its employees, its subcontractors, and others who were working on the munitions clearing project. Parsons relied on a subcontractor to provide the security services.
>
> After seeking bids for the security subcontract, a Parsons committee awarded it to ArmorGroup. But an Army Corps of Engineers contracting officer in Iraq whom Cochise had bribed with trips and gifts, Wayne Shaw, was determined to override this decision and have

---

[1] Both Cochise and Parsons filed motions to dismiss. However, Cochise's motion adopts by reference the arguments raised in Parsons's motion "to the extent applicable to Cochise." (Doc. 84, p. 2).

2

the subcontract awarded to Cochise. Shaw directed Hunt to have Hoyt Runnels, another Parsons employee who served on the committee that selected ArmorGroup, issue a directive awarding Cochise the subcontract. When Hunt did so, Runnels refused to issue the directive, explaining that such a directive had to come from the Corps.

Shaw then created a forged directive rescinding the award to ArmorGroup and awarding the subcontract to Cochise. The directive had to be signed by Steven Hamilton, another Corps contracting officer. Hamilton, who was legally blind, relied on Shaw to describe the document he was signing. Shaw did not disclose that the directive rescinded the award to ArmorGroup so that the subcontract could be awarded to Cochise.

After Hamilton signed the directive, Shaw directed Runnels to execute it. Runnels again refused because he believed the award to Cochise had been made in violation of government regulations. Shaw threated to have Runnels fired. Two days later, Hamilton learned that the directive Shaw had him sign rescinded the award to ArmorGroup and awarded Cochise the subcontract. Hamilton immediately rescinded his directive awarding the subcontract to Cochise.

After Runnels refused to follow Shaw's directive to award the subcontract to Cochise, another Parsons employee, Dwight Hill, replaced Runnels and was given responsibility for awarding the security subcontract. Rather than give the subcontract to ArmorGroup, Hill awarded it to Cochise through a no-bid process. Hill justified using a no-bid process by claiming there was an urgent and immediate need for convoy services and then defended the choice of Cochise to fill this immediate need by asserting that Cochise had experience that other security providers lacked. But Hunt alleges that Hill selected Cochise because he was its partner in the fraudulent scheme.

From February through September 2006, Cochise provided security services under the subcontract. Each month the United States government paid Cochise at least $1 million more than it would have paid ArmorGroup had ArmorGroup been awarded the subcontract. The government incurred other additional expenses as well. For example, armored vehicles were needed to provide the security services, and because Cochise had no such vehicles, the government paid more than

> $2.9 million to secure the vehicles. In contrast, ArmorGroup would have supplied its own armored vehicles, saving the government millions of dollars. In September 2006, when Shaw rotated out of Iraq, Parsons immediately reopened the subcontract for bidding and awarded it to ArmorGroup.
>
> Several years later, Hunt reported the fraud to the United States government. On November 30, 2010, FBI agents interviewed Hunt about his role in a separate kickback scheme. During the interview, Hunt told the agents about the contractors' fraudulent scheme involving the subcontract for security services. For his role in the separate kickback scheme, Hunt was charged with federal crimes, pled guilty, and served ten months in federal prison.

*Cochise Consultancy, et. al., v. United States, ex rel. Billy Joe Hunt*, 887 F.3d 1081, 1083-85 (11th Cir. 2018).

## II. Procedural History

On November 27, 2013, after being released from prison, Hunt filed under seal the present complaint against the defendants. In the complaint, Hunt set forth two theories why the claims the contractors submitted for payment qualified as false claims under the FCA. First, he alleged that Cochise fraudulently induced the government to enter into the subcontract with Cochise by providing illegal gifts and gratuities to Shaw and his team. He alleged that Parsons, through Dwight Hill, conspired with Cochise and Shaw to rig the bidding process for the subcontract. Second, Hunt alleged that the defendants had a legal obligation to disclose credible evidence of improper conflicts of interest and payment of illegal gratuities to the United States but failed to do so. The defendants have argued that Hunt's second

4

theory regarding timely disclosure of the conflicts of interest and illegal gratuities must be dismissed because the regulation on which it was predicated did not become effective until after the alleged conduct. Hunt agrees and asks the Court to voluntarily dismiss this claim. *See* (Doc. 98, p. 1, n. 1)("The regulation cited in the Complaint was enacted after the conduct alleged occurred, and thus has no applicability to prior events. Relator has not changed his position, and that claim should be deemed voluntarily dismissed."). Accordingly, insofar as Hunt has alleged a violation of the FCA for failing to timely disclose conflicts of interest and improper gifts and gratuities, those claims are **DISMISSED**.

After the United States declined to intervene, Hunt's complaint was unsealed. The contractors moved to dismiss, arguing that the claim was time barred under the six-year limitations period in 31 U.S.C. § 3731(b)(1), and Hunt had waited more than seven years after the fraud occurred to file suit. As noted, the Eleventh Circuit held that Hunt's complaint was not time barred because another provision in that section, § 3731(b)(2), applied to relators like Hunt. The case has now been remanded to this Court for further proceedings.

### III. The Defendants' Motions to Dismiss

In their renewed motions to dismiss, the defendants argue that Hunt's complaint should be dismissed for three reasons. First, the defendants contend that Hunt failed to plead his fraud allegations with the requisite particularity required by

5

Fed. R. Civ. P. 9(b).  Second, the defendants assert that the government had knowledge of the alleged false claims thereby negating the scienter requirement of the FCA.  Finally, the defendants argue that the claims are time barred by a different provision of the FCA not addressed by the Eleventh Circuit or the Supreme Court.  The Court is not persuaded by any of these arguments.

### A. Defendants' Claim that the Pleading is Deficient

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must cross "the line between possibility and plausibility of entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-66 (2007) (citations omitted).  As the Supreme Court held in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Thus, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*., at 663 (*citing Twombly*, 550 U.S. at 555).  In addition, because *qui tam* actions under the FCA involve allegations of fraud, they must be pled "with particularity" to "meet the heightened pleading standard of Rule 9(b)."

*Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th. Cir. 2009), *citing Clausen*, 290 F.3d 1301, 1309-10 (11th Cir. 2002).

According to the defendants, Hunt failed to specifically identify any actual claims for payment that either defendant made to the government. The defendants also argue that Hunt's use at times of the term "Defendants" as opposed to specifically identifying each party, renders his complaint vague and insufficiently specific. The Court disagrees and finds that the complaint is sufficient to put both defendants on notice of the claims against them and that the complaint is sufficient to identify the allegedly fraudulent claims for payment.

Citing *Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006), the defendants highlight the Eleventh Circuit's explanation that "[t]he particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Further, the defendants correctly note that an FCA complaint "satisfies Rule 9(b) if it sets forth facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, *when they occurred, and who engaged in them*." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th. Cir. 2009)(quotation omitted) (emphasis in original); *see also Marsteller for use & benefit of United States v. Tilton*, 880 F.3d 1302, 1310 (11th Cir. 2018) ("Under Rule 9(b) allegations of fraud

7

must include facts as to time, place, and substance of the defendant's alleged fraud.")(quotation omitted). Further, Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted…" *Clausen*, 290 F.3d at 1311.

Hunt alleged in his statement of claims that both defendants "presented, or caused to be presented, false or fraudulent claims to the United States government for payment or approval, and/or presented false or fraudulent claims to contractors, grantees, or other recipients seeking payment of money…." (Doc. 1, p. 23). Hunt incorporated his earlier assertions into that claim which, in addition to thoroughly describing the general contract awarded to Parsons and the security work that was to be performed under its subcontract with Cochise, specifically identified the contracts by number. *See* (Doc. 1, p. 14-15)(contract identified by its "IDV Procurement Instrument Identification No. W912DY040005"; subcontract to Cochise identified by "Subcontract No. 800618-6006 and Parsons's Task order 744757300003."). Hunt also provided the dates of these contracts and asserted that "every claim for payment under the contracts at issue is a false claim subject to penalties and liability," *Id.* at 4. Thus, the Court finds that Hunt's allegations are sufficient to put the defendants on notice of the claims against them.

Further, the allegations in the complaint sufficiently allege that claims for payment were actually submitted to the United States. Although Hunt does not specifically point to or provide an invoice or bank statement showing that these claims were made, his allegations, taken as a whole, are specific enough to defeat a motion to dismiss.

Additionally, Hunt's use of the word "Defendants" is not vague or confusing. At multiple places in the complaint, Hunt specifically identifies which defendant is alleged to have done certain acts. In the instances in which he aggregates the two by referencing "the Defendants," it is clear that those allegations refer to both parties. In other words, the complaint is not the type of shotgun pleading where it is unclear which allegations refer to which defendants. Hunt has delineated his allegations when appropriate and referred to the defendants in the aggregate when applicable. Accordingly, the defendants are entitled to no relief on this issue.

The defendants also contend that Hunt's conspiracy allegations should be dismissed for failure to plead with particularity. The elements of an FCA conspiracy claim are "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello*, 428 F.3d at 1013-14. Rule 9(b) also applies to the allegations of conspiracy. *Id.* According to

Parsons, there are no specific allegations that Parsons was a knowing participant in a conspiracy or agreement to violate the law.

Again, the Court has reviewed the complaint and finds that the allegations are sufficiently specific and particular to satisfy Rule 9(b).  Hunt generally alleged that Cochise, through its president, gave improper gifts and gratuities to Shaw so that Shaw would use his position and influence to ensure that Parsons awarded the subcontract to Cochise.  Had Hunt left it at that, the Court would agree that the allegations were too vague to survive a motion to dismiss.  However, Hunt went much further.

As noted above in the statement of facts, Hunt did more than allege a general scheme to defraud the government.  He specifically alleged that certain employees at Parsons including Hoyt Runnels, Adrian Quick, Michael Goodman, and Joe Bell, knew that Cochise was not qualified to be awarded the subcontract at issue and refused to give their consent to the award.  Those employees and other Parsons employees had overseen the bidding process in which it was determined that ArmorGroup was the most qualified contractor to provide the necessary services.  Hunt alleged that, despite that determination, COE employee Wayne Shaw – who was being given improper gifts by Cochise - forged a directive that would have awarded to contract to Cochise.  Nevertheless, several Parsons employees persisted in their objections.  However, Parsons employee Dwight Hill sent an email

explaining that the award to Cochise was being made under an exception to the regulations relied on in the bidding process. According to Hunt, Hill "falsely stated that Cochise had 'on the job' familiarity with the mission that other security providers did not have." (Doc. 1, p. 19). Hunt asserted that "Hill used this supposed 'urgency' and false lack of other providers with necessary capabilities to make a 'sole source award' even though there were other bidders with similar or superior capabilities, to Cochise." *Id.* Hunt also alleged that awarding the subcontract to Cochise cost the government millions of dollars because, he said, Cochise did not have adequate equipment to carry out the mission, and that equipment had to be purchased by the government.

Those allegations, if true, would demonstrate that Parsons, Cochise, and Wayne Shaw conspired to ensure that Cochise was given a contract it was not otherwise entitled to get; that Parsons employee Dwight Hill made false statements in order to see that the contract was awarded to Cochise; and that the United States was damaged as a result. Accordingly, Hunt has sufficiently alleged facts that, if true, would establish a violation of the FCA, and dismissal would not be appropriate.

**B. Defendants' Claim that the Government's Knowledge of the facts Negates the Requisite Scienter[2]**

---

[2] This argument appears to pertain only to Parsons.

The defendants note that the Eleventh Circuit has not specifically addressed this issue. (Doc. 83, p. 23, n. 6). However, the defendants assert that, generally, government knowledge of an alleged false claim can "vitiate an FCA action." *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542 (7th Cir. 1999) ("[I]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim. In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA."); *see also Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000)(holding that "extensive [government] knowledge" and cooperation between government and contractor can negate FCA intent requirement). "The 'government knowledge inference' helps distinguish, in FCA cases, between the submission of a false claim and the knowing submission of a false claim—that is, between the presence and absence of scienter." *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 951 (10th Cir. 2008); *see also United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002) (collecting cases).

According to the defendants, the government official with ultimate responsibility over Parsons's contract – COE Contracting Officer Wayne Shaw – had full knowledge of the alleged false claims Hunt is now relying on to support this action. The defendants' argument is as follows:

> Parsons, first through Runnels, required that a valid directive from the government be issued prior to making an award to Cochise. Next, once the forged directive was issued, Parsons, this time through Hill, issued the award to Cochise in compliance with regulations and the Contracting Officer's directive. Importantly, the Complaint does not assert that Hill or Runnels knew that the directive issued to Parsons was allegedly forged by Contracting Officer Shaw.

(Doc. 83, p. 24). Thus, the defendants argue that Parsons could not have knowingly submitted a false claim because it was relying on a directive from Shaw, a government employee. Essentially, the defendants are arguing that Parsons was simply following the directives of the government.

However, this argument ignores Hunt's allegation that Hill made statements he knew to be false in overriding Parsons's initial decision to award the contract to ArmorGroup. *See* (Doc. 1, p. 19)(Hill "*falsely stated* that Cochise had 'on the job' familiarity with the mission that other security providers did not have. Hill used this supposed 'urgency' and *false* lack of other providers with necessary capabilities to make a 'sole source award' even though there were other bidders with similar or superior capabilities, to Cochise." )(emphasis added). Hunt also alleged that Hill inserted Cochise into the bidding process even though he and other Parsons employees knew that Cochise was not qualified to bid. *See* (Doc. 1, p. 14). Those allegations, if true, would demonstrate that Parsons, through Hill, made false statements in order to secure the subcontract for Cochise. Thus, the complaint

13

sufficiently alleges that Parsons was complicit in the scheme as well. Accordingly, neither defendant is entitled to dismissal on this basis.

## C. Defendants' Claim that Hunt's Complaint is Time Barred for a Reason not Addressed by the Eleventh Circuit

Finally, the defendants assert that Hunt's claims are time barred for a reason not addressed by the Eleventh Circuit in *United States, ex rel. Billy Joe Hunt v Cochise Consultancy, et. al.,* 887 F.3d 1081 (11th Cir. 2018), or the Supreme Court in *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019). The FCA's statute of limitations, set forth in 31 U.S.C. § 3731(b), provides as follows:

> A civil action under section 3730 may not be brought—
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
> whichever occurs last.

Hunt has always conceded that his complaint does not meet the FCA's six-year statute of limitations set forth at 31 U.S.C. § 3731(b)(1). *See* (Doc. 48, p. 1). However, Hunt claims that the complaint is timely under subsection 3731(b)(2)'s alternative three-year limitations period. The judge previously assigned to this case

held that when the United States declines to intervene, as is the case here, § 3731(b)(2) does not apply.  However, the Eleventh Circuit disagreed and held that § 3731(b)(2) applied to relators like Hunt irrespective of whether the government intervened.  *United States ex rel. Hunt v. Cochise Consultancy, Inc*., 887 F.3d 1081, 1097 (11th Cir.)("Applying our conclusions that § 3731(b)(2) applies in non-intervened cases and is triggered by the knowledge of a government official, not of the relator, we hold that it is not apparent from the face of Hunt's complaint that his FCA claim is untimely.").

In the present motion, the defendants note that § 3731(b)(2) provides that an FCA complaint must be filed within three years of "when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances."  The defendants point out that neither the Eleventh Circuit nor the Supreme Court directly addressed who the "official of the United States charged with responsibility to act in the circumstances" is for purposes of triggering § 3731(b)(2).

The defendants correctly assert that, as pleaded, the complaint alleges that Shaw, the Contracting Officer for the COE, had knowledge of the fraudulent conduct giving rise to this action as it was happening, i.e., as early as February 2006. Therefore, the defendants say, the three-year clock began to run at that point in time. Hunt contends that the three-year clock was triggered on November 30, 2010,  the

date he first disclosed information about the scheme to the Federal Bureau of Investigation. Because the complaint was filed on November 27, 2013, that date would render the claims timely.

The defendants have candidly admitted that no circuit court of appeal has addressed the issue of who the "official of the United States charged with responsibility to act in the circumstances" is for purposes of subsection 3731(b)(2). Rather, they have cited authority for the proposition that the term "official of the United States" should be interpreted broadly, legislative history of the FCA, and an excerpt from a treatise on *qui tam* actions under the FCA. The Court has considered those arguments and finds them unpersuasive. Absent a decision of the Eleventh Circuit or the United States Supreme Court adopting the defendants' interpretation, this Court is not inclined to accept it.

The defendants' interpretation would lead to absurd and unfair results. Under their reading of the phrase, the time period for a relator to bring an action under the FCA would be shortened whenever a government official is involved in the alleged fraud. In the present case, the defendants' definition would mean that Shaw, a man alleged to have participated in the fraudulent scheme, would be the government official "charged with responsibility to act in the circumstances," i.e., that Shaw would be responsible for investigating and reporting his own fraudulent conduct. Thus, the three-year period would begin on the first day that the fraudulent activity

occurred. The Court finds the defendants' interpretation of the statute to be unpersuasive. Accordingly, neither defendant is entitled to relief on that basis.

## IV. Additional Motions

Also pending before the Court is the plaintiff's Motion for Order to Release Information and a motion for leave to file a sur-reply brief. (Docs. 85 and 101). As to the latter, the Court has found no need to consider the sur-reply brief in ruling on this motion. Accordingly, the motion for leave to file a sur-reply brief (Doc. 101) is **DENIED AS MOOT**.

In his motion for release of information, Hunt asserts that he has attempted to obtain several documents from the United States Army Corps of Engineers to no avail. According to Hunt, despite sending requests under the Freedom of Information Act, he has met resistance from the Corps because, they say, some of the requested documents may be classified.

The defendants argue that a Court order at this juncture would be procedurally improper because, they say, Hunt has failed to follow the guidelines laid out in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and other federal regulations. To the extent Hunt sought these documents in order to remedy perceived deficiencies in his complaint, the motion is moot given the Court's present ruling. However, to the extent Hunt seeks these same documents for later use in these proceedings, the defendants' arguments are well taken. Going forward, Hunt

17

should go through the proper channels in order to obtain relevant discovery. If, having done so, Hunt still believes that he is entitled to documents that are being withheld, he is free to file a motion to compel further explaining the issue. Accordingly, the motion for release of information is **DENIED WITHOUT PREJUDICE**.

## V. Conclusion

For the foregoing reasons, Parsons's motion to dismiss (Doc. 83) is **DENIED**. As noted, Cochise merely adopted Parsons's arguments as their own for purposes of their motion to dismiss. Having found those arguments to be without merit, Cochise's motion (Doc. 84) is **DENIED**.

The Court also notes that this case was stayed on July 9, 2018, pending the United States Supreme Court's decision in the above-mentioned case. (Doc. 72). The parties were ordered to file a status report within three days of the Supreme Court's decision. *Id.* On June 28, 2019, the parties filed a joint status report informing the Court of the decision and requesting a status conference. (Doc. 75). After that conference, this Court entered an order allowing limited discovery. (Doc. 79). However, the order did not fully lift the stay. Given the Court's decision in this memorandum opinion and order, the stay is hereby **LIFTED**.

**DONE** and **ORDERED** this September 9, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE